923 So.2d 387 (2005)
Thomas KNIGHT, a/k/a Askari Abdullah Muhammad, Appellant,
v.
STATE of Florida, Appellee.
Askari Abdullah Muhammad, f/k/a Thomas Knight, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC03-631, SC04-1366.
Supreme Court of Florida.
November 3, 2005.
Rehearing Denied February 24, 2006.
*388 D. Todd Doss, Lake City, FL, for Appellant/Petitioner.
*389 Charles J. Crist, Jr., Attorney General, Tallahassee, FL and Sandra S. Jaggard, Assistant Attorney General, Miami, FL, for Appellee/Respondent.
PER CURIAM.
Thomas Knight, n/k/a Askari Abdullah Muhammad, appeals an order of the circuit court summarily denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons expressed below, we affirm the circuit court's order denying postconviction relief and deny Muhammad's habeas petition.

FACTS AND PROCEDURAL HISTORY
The facts of the crimes in this case are set forth in our direct appeal opinion:
Upon arriving at his place of business and parking in his designated space [on the morning of July 17, 1974], Mr. Gans was approached by the defendant who was carrying an automatic rifle and was told to re-enter his automobile, to drive home and get Mrs. Gans, and to drive to the bank and get $50,000. While inside the bank, Mr. Gans informed the president about the abduction. The police and FBI were alerted. Mr. Gans then returned to his car with the money. He and his wife, shortly thereafter, were found shot to death, the fatal shotsperforating through their neckshaving been fired from the rear seat of the vehicle. Thereafter, appellant was apprehended and taken into custody in a weeded area about 2,000 feet from the Gans' vehicle. Underneath him buried in the dirt was an automatic rifle and a paper bag containing $50,000. There were blood stains on his pants.
Knight v. State, 338 So.2d 201, 202 (Fla. 1976). The jury convicted Muhammad of two counts of first-degree murder and recommended that the death penalty be imposed for each. Id. The trial judge sentenced Muhammad to death, and on direct appeal, this Court affirmed the convictions and sentences.[1]Id. at 205.
In December 1979, Muhammad filed a habeas petition, alleging ineffective assistance of appellate counsel. Knight v. State, 394 So.2d 997, 998-99 (Fla.1981). While the petition was pending, the Governor signed a death warrant, scheduling Muhammad's execution for the Gans' murders for March 3, 1981. Id. at 999. On February 2, 1981, a motion for a stay of execution was filed with this Court. Id. *390 On February 24, 1981, this Court denied the stay and Muhammad's habeas petition. Id. at 1003.
Muhammad then filed a habeas petition and a motion for stay of execution in the federal district court. Knight v. Dugger, 863 F.2d 705, 706-07 (11th Cir.1988). The federal district court granted the stay, retained jurisdiction over the petition, and ordered Muhammad to exhaust state law remedies regarding his contention that trial counsel was ineffective. Id. at 707. Muhammad's subsequent rule 3.850 motion, filed in state court pursuant to the federal district court's directive, was denied without an evidentiary hearing, and on appeal the denial was affirmed. Muhammad v. State, 426 So.2d 533, 535 (Fla. 1982).
When Muhammad then pursued his previously filed federal habeas petition, the federal district court ultimately dismissed the petition. Knight, 863 F.2d at 707. The Eleventh Circuit, on review of the dismissal, affirmed on six of the seven issues presented, but granted relief on one claim because it was uncertain whether a claimed Lockett/Hitchcock[2] error was harmless. 863 F.2d at 710. The court
remand[ed] this case to the district court with instructions to enter an order granting the application for writ of habeas corpus, unless the State within a reasonable period of time either resentences Muhammad in a proceeding that comports with Lockett or vacates the death sentence and imposes a lesser sentence consistent with law.
Id.[3] The State agreed to a resentencing, and on February 20, 1996, at the conclusion of the resentencing proceeding, the judge accepted the jury's recommendation of two death sentences for the Gans' murders by a vote of nine to three. Knight v. State, 746 So.2d 423, 426 (Fla.1998). The trial court again imposed death sentences for each murder. Id. On direct appeal from the resentencing proceeding, this Court affirmed the imposition of the death sentences. Id. at 437.
Muhammad then filed a rule 3.850 motion on November 7, 2000, and an amended rule 3.850 motion on March 23, 2002. After a Huff[4] hearing, the circuit court summarily denied all of Muhammad's postconviction claims, concluding that they were either procedurally barred, conclusively refuted by the record, facially or legally insufficient as alleged, without merit as a matter of law, or not ripe for consideration.[5]

*391 POSTCONVICTION CLAIMS
On appeal, Muhammad contests the summary denial of the majority of his postconviction claims. Upon careful review of Muhammad's motion and the circuit court's detailed order, we find no error in the circuit court's determination that summary denial was appropriate on each of the claims presented. Accordingly, we affirm the denial of relief on these claims because they are either procedurally barred,[6] conclusively refuted by the record,[7] *392 facially or legally insufficient as alleged,[8] or without merit as a matter of law.[9] For further explanation of the circuit court's resolution of the individual issues, we attach as an appendix the order denying postconviction relief rather than *393 repeating in detail those reasons in this opinion.

PETITION FOR WRIT OF HABEAS CORPUS
Muhammad raises five claims in his petition for writ of habeas corpus: (1) whether appellate counsel rendered ineffective assistance of counsel in failing to raise on appeal the issue of the State's delay in resentencing Muhammad; (2) whether appellate counsel rendered ineffective assistance of counsel in failing to ensure a complete appellate record; (3) whether appellate counsel rendered ineffective assistance in failing to challenge on appeal the resentencing court's refusal to individually voir dire prospective jurors; (4) whether execution by electrocution or lethal injection constitutes cruel and unusual punishment; and (5) whether rule 4-3.5(d) of the Rules Regulating the Florida Bar is unconstitutional.[10] For the reasons that follow, we deny habeas relief.

Appellate Counsel's Ineffectiveness
In Orme v. State, 896 So.2d 725 (Fla.2005), we recently explained the standard for analyzing claims of ineffective assistance of appellate counsel:
Claims of ineffective assistance of appellate counsel are properly raised in a petition for writ of habeas corpus addressed to the appellate court that heard the direct appeal. See Rutherford v. Moore, 774 So.2d 637 (Fla.2000). Such claims must be analyzed using the same two-pronged test promulgated in Strickland. That is, we must determine whether counsel's performance was deficient, and, if so, we must determine if the deficient performance prejudiced the defendant. In Rutherford we said:
If a legal issue "would in all probability have been found to be without merit" had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective. Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994); see, e.g., Kokal v. Dugger, 718 So.2d 138, 142 (Fla.1998); Groover, 656 So.2d at 425. This is generally true as to issues that would have been found to be procedurally barred had they been raised on direct appeal. See, e.g., Groover, 656 So.2d at 425; Medina v. Dugger, 586 So.2d 317, 318 (Fla.1991).
Id. at 643; accord Spencer v. State, 842 So.2d 52, 74 (Fla.2003). This principle is applicable to this case unless the error is deemed to be fundamental error. Fundamental error is an error that "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So.2d 895, *394 898 (Fla.1996) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)).
Id. at 737-38.
In his first habeas claim, Muhammad contends that appellate counsel were ineffective in failing to raise on appeal the issue of the State's failure to resentence Muhammad "within a reasonable period of time." Knight, 863 F.2d at 710. Upon review of the record, we conclude, as did the circuit court in denying a similar postconviction claim, that Muhammad was responsible, in part, for the delay in resentencing. Thus, this claim is denied. See San Martin v. State, 705 So.2d 1337, 1347 (Fla.1997) ("A party may not invite error and then be heard to complain of that error on appeal."). "[A]ppellate counsel cannot be ineffective for failing to present a meritless claim." Pietri v. State, 885 So.2d 245, 273 (Fla.2004).[11]
Muhammad next asserts that appellate counsel were ineffective for failing to ensure that a complete record was compiled on appeal. We conclude that this claim is without merit because the record does, in fact, contain the allegedly omitted portions and because Muhammad has not alleged a sufficient basis of prejudice with respect to the untranscribed portions of the resentencing proceeding. See, e.g., Sochor v. State, 883 So.2d 766, 789 (Fla.2004) (rejecting claim that appellate counsel was ineffective for failing to ensure a complete appellate record because "Sochor has not pointed to any errors that occurred during the untranscribed portions of the proceedings; he therefore has not established the necessary element of prejudice"). Thus, we also reject this claim.
We conclude that Muhammad's claim that appellate counsel were ineffective for failing to challenge on appeal the resentencing court's refusal to individually voir dire prospective jurors regarding their exposure to media coverage of the case is similarly without merit. Prospective jurors who indicated exposure to media coverage were individually voir dired, and contrary to Muhammad's contention, jurors Collier and Coachman never overheard other prospective jurors' comments about their exposure to media coverage. Because each prospective juror who indicated exposure to media coverage was privately interviewed outside of the presence of the other prospective jurors, we deny relief on this claim.
We also reject Muhammad's claim that appellate counsel were ineffective in failing to challenge on appeal the resentencing court's refusal to individually voir dire prospective jurors regarding their views on the death penalty. That claim is wholly conclusory, amounting to little more than speculation that the jurors in his case must have been influenced by the comments of prospective juror Painter in responding to questions from the trial court. When the comments are considered in context, Muhammad has not demonstrated that the uttering of these remarks would compel reasonable counsel to raise the issue on appeal. See San Martin v. State, 717 So.2d 462, 467 (Fla.1998) ("[A] trial court's denial of individual voir dire will only be reversed where a defendant demonstrates the partiality of the jury or an abuse of discretion. . . .").

*395 Other Claims
Muhammad's remaining claims were raised in his postconviction motion and cannot be relitigated in a habeas petition. See Baker v. State, 878 So.2d 1236, 1241 (Fla.2004) ("Nor can habeas corpus be used as a means . . . to litigate issues that . . . were raised in a motion under rule 3.850."); Parker v. Dugger, 550 So.2d 459, 460 (Fla.1989) ("[H]abeas corpus petitions are not to be used for additional appeals on questions which . . . were raised . . . in a rule 3.850 motion . . . ."). Accordingly, we deny relief on those claims.

CONCLUSION
For the reasons stated, we affirm the circuit court's denial of postconviction relief and deny Muhammad's petition for a writ for habeas corpus.[12]
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, J., concurs in result only.

APPENDIX
 IN THE CIRCUIT COURT OF THE
 ELEVENTH
 ELEVENTH JUDICIAL CIRCUIT
 IN AND FOR
 MIAMI-DADE COUNTY, FLORIDA
STATE OF FLORIDA,
 Plaintiff,
vs.
ASKARI ABDULLAH MUHAMMAD,
A/K/A THOMAS KNIGHT,
 Defendant.
 CASE NO. F74-05978

ORDER DENYING AMENDED MOTION FOR POST CONVICTION RELIEF
THIS CAUSE came on to be heard upon application of the defendant on an Amended Motion for Post Conviction Relief filed pursuant to Florida Rule Criminal Procedures 3.850. This Court, upon review of the defendant's motion, Amended Motion, State's Response to Amended Motion, Transcripts of the Re-sentencing Proceedings, Supreme Court Opinion in Knight v. State, 746 So.2d 423 (Fla.1998), the Sentencing Order of the trial court in this cause re-sentencing the defendant to death, all documents submitted in-camera for review, after hearing argument of counsel and otherwise being fully advised in the premises, it is:
FOUND, ORDERED and ADJUDGED:
1. That the defendant was charged by indictment on August 24, 1974, for the First Degree Murder of Lillian Gans and Sidney Gans.
2. That the matter was originally tried in calendar year 1975 whereupon the defendant was found guilty as charged and the jury recommended the imposition of the death penalty for both murders.
3. The trial court adjudicated the defendant guilty and imposed the sentence of death upon the defendant for each of the murders.
4. The defendant appealed these convictions and sentences to the Florida Supreme *396 Court which were affirmed, Knight v. State, 338 So.2d 201 (Fla.1976). Thereafter, the defendant sought various forms of collateral relief from the Federal Courts which ultimately resulted in the Eleventh Circuit Court of Appeals vacating the defendant's sentence and remanding for resentencing. Knight v. Dugger, 863 F.2[d] 705 (11th Cir.1988). The defendant was returned to the Eleventh Circuit in and for Miami-Dade County, Florida, on or about May of 1990, in connection with the resentencing proceedings.
5. The re-sentencing proceedings ultimately commenced on January 23, 1996, with the culmination of the trial court's resentencing the defendant to death on February 20, 1996.
6. The death sentences were affirmed by the Supreme Court in Knight v. State, 746 So.2d 423 (Fla.1998), cert. denied [528 U.S. 990,] 120 S.Ct. 459[, 145 L.Ed.2d 370] (1999).
7. The defendant's Motion for Post Conviction Relief was due to be filed on or before November 8, 2000.
8. The defendant's Motion for Post Conviction Relief (Shell motion) was filed on November 7, 2000.
9. Conflict free counsel was appointed on January 24, 2001.
10. Various hearings were held in the interim concerning public disclosure requests.
11. Defendant's Amended Motion for Post Conviction Relief was filed on March 23, 2002, with the State responding to the Amended Motion on September 3, 2002.
12. In addressing the 28 claims filed by the defendant, this Court is governed by the standard of review that a defendant is entitled to an Evidentiary Hearing on a Post-Conviction Relief Motion unless, (1) the motion, files and records in the case conclusively show that the defendant is entitled to no relief, or (2) the Motion or the particular claim is legally insufficient. The Defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden. Freeman v. State, 761 So.2d 1055 (Fla.2000).
13. The burden of persuasion is on a defendant to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable. See Strickland v. Washington, [466 U.S. 668,] 104 S.Ct. 2052, 2064[, 80 L.Ed.2d 674] (1984). The standard for counsel's performance is "reasonableness under prevailing professional norms." Strickland v. Washington, 104 S.Ct. 2052, 2065. "The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is . . . whether what they did was within the `wide range of reasonable professional assistance.'" Waters v. Thomas, 46 F.3d 1506, 1518 (11th Cir. 1995). (citations omitted).
14. In order to prevail on an ineffective assistance of counsel claim, the defendant must demonstrate counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the defendant by the Sixth Amendment.
Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless the defendant makes such showing it cannot be said that the conviction or death sentence resulted in a break down in the adversary process *397 that renders the result unreliable. Strickland v. Washington, 466 U.S. at 687[, 104 S.Ct. 2052].
15. To establish prejudice during the penalty phase the defendant must show that there is a reasonable probability that, absent trial counsel's error, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. Cherry v. State, 781 So.2d 1040 (Fla.2000) quoting Strickland 466 U.S. at 695[, 104 S.Ct. 2052].
16. Conclusory allegations are insufficient to meet a defendant's burden of establishing a prima facie case that he is entitled to post-conviction relief. Freeman v. State, supra.
17. The defendant has filed 28 claims in the Amended Motion seeking post-conviction relief and are addressed hereafter in this Order.

CLAIM I
ACCESS TO THE FILES AND RECORDS PERTAINING TO MR. MUHAMMAD'S CASE IN THE POSSESSION OF CERTAIN STATE AGENCIES HAVE BEEN WITHHELD IN VIOLATION OF THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, THE EIGHTH AMENDMENT, AND THE CORRESPONDING PROVISIONS OF THE FLORIDA CONSTITUTION.
In this claim, the defendant alleges that the Metro-Dade Police Department, the State Attorney's Office, the Department of Corrections, have failed to turn over all records that the said parties may possess. Additionally, the defendant claims that the records from the Bradford County case as of the filing of the amended motion have not been transmitted to this Court for review. Each of these respective claims have previously been heard by this Court and ruled upon, and the respective agencies have filed their notices of compliance with the Public Records Act. Additionally, the Bradford County records had been received and reviewed by this Court with rulings having been entered on the defendant's claim. Defense counsel at the Huff hearing held in this cause on December 13, 2002, conceded that there were no new records or amendments to defendant's motion concerning this claim. Accordingly, this claim is denied without an Evidentiary Hearing.

CLAIM II
THE STATE'S EIGHT YEAR DELAY IN PROSECUTING MR. MUHAMMAD AND SEEKING THE DEATH PENALTY VIOLATED MR. MUHAMMAD'S FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS. THE STATE'S DELAY AND VIOLATION OF MR. MUHAMMAD'S DUE PROCESS RIGHTS PRECLUDED THE STATE'S ABILITY TO SEEK A SENTENCE OF DEATH.
The defendant alleges that the delay between the time the Federal Court reversed his death sentence by 1988 and the commencement of his new penalty phase trial violated the Federal Court's Mandate which caused him to suffer immeasurable prejudice due to the State's delay and cites authority to the effect that is a violation of the defendant's due process rights. The defendant further alleges that he was prejudiced by the destruction of Dr. Corwin's notes but fails to allege specifically what was in those notes, how the existence of the notes would have likely led to a different result had he been re-tried. Additionally, *398 the record indicates that Dr. Corwin was questioned on his ability to testify by reviewing his report generated in the case and the Doctor's testimony was that he had an actual recollection and that in fact he did remember Mr. Knight. (RST 2682-2684). Moreover, this Court finds the defendant's claim is procedurally barred in as much as the issue of delay was raised on appeal and rejected by the Supreme Court where the Court found that both parties bear the responsibility for the long delay. Knight v. State, 746 So.2d at 437 (Fla.1998).
Assuming that defendant's claim is not procedurally barred, as found by the Supreme Court in Knight supra, the delay was partially caused by the defendant. New counsel had been appointed and sought continuances to prepare, requested competency hearings, failed to cooperate with some of the appointed experts, litigated payments of expert bills against the County, and resisted and failed to provide discovery. Clearly since the defendant contributed to the delay, he cannot now complain about it. San Martin v. State, 705 So.2d 9337[1337] (Fla.1997).
Lastly, the defendant also alleges that the passage of time prejudiced him in that it prevented him from getting a reliable competency determination. Competency is defined as whether the defendant has the sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him at the time of trial. Tuskey[Dusky] v. United States, 362 U.S. 402[, 80 S.Ct. 788, 4 L.Ed.2d 824] (1960). In connection with this claim, the record sufficiently establishes that some of the expert witnesses for the defendant examined him prior to the re-sentencing being ordered. Consequently, timing is not a prejudicial problem. Accordingly, this Claim is denied without an Evidentiary Hearing.

CLAIM III
MR. MUHAMMAD WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT ALL STAGES OF HIS RE-SENTENCING IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS DUE TO THE ACTIONS OF THE STATE IN FAILING TO RE-SENTENCE MR. MUHAMMAD WITHIN A REASONABLE AMOUNT OF TIME. ADDITIONALLY, COUNSEL FAILED TO ADEQUATELY INVESTIGATE AND PREPARE MR. MUHAMMAD'S CASE, TO CHALLENGE THE STATE'S CASE, AND FAILED TO ZEALOUSLY ADVOCATE ON BEHALF OF HIS CLIENT. COUNSEL FAILED TO OBJECT TO OBVIOUS INADMISSIBLE EVIDENCE. COUNSEL FAILED TO EFFECTIVELY CROSS EXAMINE THE STATE'S WITNESSES. COUNSEL FAILED TO ADEQUATELY OBJECT TO EIGHTH AMENDMENT ERROR. A FULL ADVERSARIAL TESTING DID NOT OCCUR. THE COURT AND STATE RENDERED COUNSEL INEFFECTIVE. COUNSEL'S PERFORMANCE WAS DEFICIENT, AND AS A RESULT, MR. MUHAMMAD'S DEATH SENTENCE IS UNRELIABLE.
Defendant, as he did in Claim II, alleges that counsel was ineffective for failing to ensure that a re-sentencing trial occurred in a timely manner. As this Claim was addressed in Claim II, there is no compelling reason to re-address the same issues in detail. Additionally, defendant raises the lost/stale evidence allegation of Dr. Corwin's destroyed notes which conclusorily *399 alleges that they had been destroyed after re-sentencing was ordered. This Claim as addressed in Claim II is without merit and counsel cannot be deemed ineffective, Kokal v. Dugger, 718 So.2d 138, 143 (Fla.1998).
Defendant next alleges that counsel was ineffective by failing to challenge the State's experts including Dr. Fennel and that the defendant was malingering when assessing his competency to proceed. Defendant does not state what questions should have been asked that were not asked and how the result would have been different if the questions has been asked. Conclusory and speculative allegations are insufficient to warrant an Evidentiary Hearing. Kennedy v. State, 547 So.2d 912, 913 (Fla.1989).
The defendant next alleges that the State failed to disclose exculpatory evidence. Defendant again in the Motion does not allege what this favorable evidence is. This claim is facially insufficient. Ragsdale v. State, 720 So.2d 203 (Fla. 1998). Defendant next alleges that counsel was ineffective and that he lost the defendant's file. The record reflects that the trial counsel asked for a copy of the original trial transcript (RSR 2524) and that in fact counsel had received a copy of that transcript by November of 1995, prior to the re-sentencing trial of this cause. (RSR 1574-75).
The defendant next alleges that trial counsel failed to provide critical and relevant materials to the experts for the competency hearing and/or that materials that were provided were not given in a timely manner. It is also alleged that other experts during re-sentencing were not properly prepared and that had re-sentencing counsel provided background information to the mental health experts, counsel would have learned that defendant's actions were a product of his mental illness. Defendant does not state how the additional materials would have changed the testimony of the experts or how the outcome would have been different. Much less as hereafter set forth, the issue of defendant's mental illness and bizarre behavior and upbringing were presented to the jury. Accordingly, this claim of lack presenting materials and/or lack of information is facially insufficient and conclusory. Kennedy v. State, 547 So.2d at 913 (Fla. 1989)
Defendant also alleges counsel was ineffective for failing to present evidence that the defendant was aware of the Police pursuit in this case. Counsel did present a lengthy hypothetical and attempted to present such evidence. RST 2070-2105, 2229, 2458-61. Defendant however fails to allege what evidence counsel could have presented to show that the defendant was aware of the Police pursuit. Accordingly, as counsel attempted to present the evidence concerning the Police pursuit and its effect on the defendant, he cannot be deemed ineffective for failing to do so. Strickland v. Washington, supra. Additionally, based on the failure to plead non-conclusory allegations, this claim is facially insufficient. Ragsdale v. State, 720 So.2d 203 (Fla.1998)
Even if evidence had been presented that the defendant was aware of the Police pursuit there is still sufficient evidence to rebut the defendant's claim that the defendant lulled the victims in a psychotic episode. Defendant took the victims to a remote spot where the Police could not see the actual shooting, he hid in a wooded area and covered himself with vegetation to hide himself from the Police. Consequently, defendant's counsel could not have been ineffective for presenting a claim that is facially insufficient and/or not *400 supported by the record. Strickland v. Washington, supra.
Defendant next alleges that counsel was ineffective in that he failed to make the jury aware of defendant's bizarre behavior, his personal problems and his upbringing and alleges that counsel failed to present evidence that he was beaten with palmetto fronds and other incidents in his life. It is alleged that counsel failed to present mental health mitigation or any mitigation. The record reflects that all of this evidence was presented to the jury. Defendant counsel called seven (7) mental health experts, Dr. Fisher (RST 2502-2600), Dr. Corwin (RST 2681-2707), Dr. Miller (RST 2732-2807), Dr. Carbonell (RST 2840-2920), Dr. McClain (RST 2937-3007), Dr. Toomer (RST 3020-3 1 OO), Dr. Rothenberg (RST 3 137-3249). In fact, the Supreme Court discussed the testimony in its opinions setting forth the material facts presented to the lower Court.
Numerous witnesses testified on Knight's behalf. They presented testimony that Knight, the second oldest of nine children, came from a family with a history of mental illness and neurological problems. Knight's sisters Mary Ann, Doris an Edna, as well as Deputy Patrick Duval, detailed the poverty, hunger and brutal beatings Knight had sustained during his childhood in Fort Pierce. Knight's father was an alcoholic who had stopped providing for his family in 1960. Knight's father beat him often and with brutality. The Knight children often went without food or clothing. In June 1960, Knight's father raped Knight's sister Mary Ann. Knight, nine years old at the time, either witnessed his sister's rape and tried to stop it, or was told about it by Mary Ann immediately thereafter.
Knight was first arrested at age nine for theft. When he was arrested on the same charge several months later, he was committed to the Florida School for Boys, the youngest child ever sent there. He was continually in trouble thereafter, until at age fifteen he was sent to state prison on a burglary conviction. At age nineteen, he was committed to the Northeast Florida State Hospital where he was diagnosed with drug and poison intoxication, excessive drinking, and paranoid personality.
Numerous mental health experts testified to Knight's longstanding mental problems. Dr. Brad fisher, a forensic psychologist, opined that Knight was a chronic schizophrenic. He testified that Knight was acting under an extreme mental or emotional disturbance at the time of the murders and that his ability to appreciate the criminality of his conduct was substantially impaired. Dr. Joyce Carbonnell, a clinical psychologist, testified that Knight was a schizophrenic and that the statutory mental mitigators were manifested at the time of the murders. Dr. Thomas McLaine, a psychiatrist, testified that he evaluated Knight in 1991, concluding that he fell "somewhere between the severe personality disorder and the schizophrenic." He also opined that at the time of the killings, Knight was under the influence of an extreme mental or emotional disturbance and that his ability to conform his conduct to the requirements of the law was "somewhat impaired all the time and [has] been for most of his 45 years." Dr. Jethro Toomer, a psychologist, opined that the statutory mental mitigators applied at the time of the murders. Dr. David Rottener, a clinical psychologist, testified that Knight was a chronic paranoid schizophrenic. Dr. William Kirwan, a psychiatrist, stated that Knight was argumentative, evasive, *401 hostile, angry and that "there was some conscious exaggeration of his symptoms with a tendency to present himself as being actually ill." Dr. Arthur Wells, a psychologist, testified that when Knight committed the murders, he was "50 percent or more out of control, had no ability to reason, to judge what he was doing."
Knight v. State, 746 So.2d at 428-429. Consequently, having presented evidence concerning mental issues to the jury counsel cannot be deemed ineffective for failing to do so. Strickland v. Washington, supra.
Defendant next alleges that counsel was ineffective by failing to move for a change of venue due to pre-trial publicity. Defendant alleges that the news coverage reached the jury and prejudiced him. He does not assert however that there is a reasonable probability that the news coverage affected the outcome of the trial. This claim is facially insufficient as conclusory allegations are insufficient to state a claim for relief. Kennedy v. State, 547 So.2d at 913. Additionally, this claim is meritless as stated in Rolling v. State, 695 So.2d 278, 284 (Fla.1997).
In McCaskill v. State, 344 So.2d 1276 (Fla.1977), we set out the test for determining whether a change of venue is required because of prejudice in the proper county:
The test for determining a change of venue is whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and pre-conceived opinion that jurors could not possibly put these matter out of their minds and try the case solely on the evidence presented in the courtroom.

Id. at 1278 (citing Kelley v. State, 212 So.2d 27, 28 (Fla. 2d DCA 1968)[)].
The trial court in its discretion must determine whether a defendant has raised such a presumption of prejudice under this standard. Manning, 378 So.2d at 276. On appeal, however, the appellate court has "the duty to make an independent evaluation of the circumstances." Sheppard v. Maxwell, 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966). In exercising its discretion, a trial court must make a two pronged analysis, evaluating: (1) the extent and nature of any pretrial publicity; and (2) the difficulty encountered in actually selecting a jury. Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).
Of course, as the trial court properly noted in its order here, pretrial publicity is normal and expected in certain kinds of cases, like this one, and that fact standing alone will not require a change of venue. Provenzano, 497 So.2d at 1182. Rather, in evaluating the nature and effect of any pretrial publicity on the knowledge and impartiality of prospective jurors the trial court must consider numerous factors, such as: (1) the length of time that has passed from the crime to the trial and when, within this time, the publicity occurred, Oats v. State, 446 So.2d 90, 93 (Fla.1984); (2) whether the publicity consisted of straight, factual news stories or inflammatory stories, Provenzano, 497 So.2d at 1182; (3) whether the news stories consisted of the police of prosecutor's version of the offense to the exclusion of the defendant's version, Manning, 378 So.2d at 275; (4) the size of the community in question, Copeland v. State, 457 So.2d 1012, 1017 (Fla.1984); and (5) whether the defendant exhausted all of this peremptory challenges. Hoy v. *402 State, 353 So.2d 826 (Fla.1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).
The second prong of the analysis requires the trial court to examine the extent of difficulty in actually selecting an impartial jury at voir dire. If voir dire shows that it is impossible to select jurors who will decide the case on the basis of the evidence, rather that the jurors' extrinsic knowledge, then a change of venue is required. Copeland, 457 So.2d at 1017. The ability to seat an impartial jury in a high-profile case may be demonstrated by either a lack of extrinsic knowledge among members of the venire, or assuming such knowledge, a lack of partiality. Oats, 446 So.2d at 93. To be qualified, jurors need not be totally ignorant of the facts of the case nor do they need to be free from any preconceived notion at all:
To hold that the mere existence of any preconceived notion as to the guilt of the accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961).
Thus, if prosecutive jurors can assure the court during voir dire that they are impartial despite their extrinsic knowledge, they are qualified so serve on the jury, and a change of venue is not necessary. Davis, 461 So.2d at 69. Although such assurances are not dispositive, they support the presumption of a jury's impartiality. Copeland, 457 So.2d at 1017. In some instances, the percentage of prospective jurors professing an extrinsic knowledge of the case or a fixed opinion has been used to determine whether pervasive community prejudice exists. However, even where a substantial number of prospective jurors admit a fixed opinion, community prejudice need not be presumed.
For instance, in Murphy the United States Supreme Court evaluated these percentages as follows:
In the present case, by contrast, 20 to 78 persons questioned were excused because they indicated an opinion as to petitioner's guilt. This may indeed be 20 more than would occur in the trial of a totally obscure person, but it by no means suggests a community with sentiment so poisoned against petitioner as to impeach the indifference of jurors who displayed no animus of their own. 421 U.S. at 803, 95 S.Ct. at 2037-38 (footnote omitted). Consistent with the Murphy rationale, court of this state have found in other cases, where similar percentages of prospective jurors voiced a bias during voir dire, that a change of venue was not required because the partiality of certain individual venire members did not reflect a pervasive prejudice infecting the entire community. See Provenzano; Copeland; see also Pitts v. State, 307 So.2d 473 (Fla. 1st DCA 1975). Rolling, 695 So.2d at 285-286.
Rolling, 695 So.2d at 285-286
Assuming the first prong of the test was met, the second prong was not. There was no difficulty in seating a jury. Only 34 of the 106 venire members questioned had been exposed to any news coverage. (RST 386-91, 1161-64, 1184). As there was no legal basis for a change of venue, counsel was not ineffective for failing to request one. Patton v. State, 784 So.2d 380, 389-90 (Fla.2000).
*403 Defendant also has one sentence claiming re-sentencing counsel failed to effectively litigate the issue of jury sequestration. Conclusory allegations without more are insufficient to state a claim for relief in post conviction proceedings. Kennedy v. State, 547 So.2d at 913 (Fla.1989); Freeman v. State, 761 So.2d 1055 (Fla.2000).
Defendant next alleges counsel was ineffective for failing to recuse the trial judge who personally vouched for Dr. Miller. Judge Ramirez made the statement about Dr. Miller. Judge Sorondo presided over the re-sentencing trial. Judge Sorondo's conversations with Dr. Miller concerned informing him why he was ordering a competency hearing. (RST 204-40, 3499). Counsel was present when Dr. Miller arrived to conduct the evaluation. Since counsel was present, there was no ex-parte communication and counsel cannot be ineffective for failing to raise this issue. Kokal v. Dugger, 718 So.2d at 143 (Fla.1998).
Defendant next alleges counsel was ineffective because of an alleged conflict of interest as he was ostensibly afraid of the defendant. Again, defendant does not identify any specific lapse during the representation of the defendant that allegedly occurred because of the alleged conflict of interest this claim is facially insufficient. Ragsdale v. State, 720 So.2d 203 (Fla. 1998). Additionally, a claim of conflict of interest must be based on dual representation and not on conflicts with an attorney's self interest. See Beets v. Collins.[Scott,] 65 F.3d 1258, 1270-71 (5th Cir.1995).
Defendant next alleges that counsel was ineffective in failing to raise appropriate objections, moving to strike, and seeking limiting instructions to prevent the admission of inadmissible testimony and evidence. Defendant alleges that the State introduced evidence that his prior attorney lifted her skirt for him without objection. Counsel did object and accordingly cannot be ineffective for failing to do so. (RST 2917-18, 2986-87).
In paragraph 32 Defendant alleges that counsel failed to effectively voir dire the panel and exercise challenges, counsel exercised a peremptory challenge to Rivero Saiz and failed to renew the objection before the jury was sworn, causing Defendant to loose a meritorious issue on appeal. Defendant does not state what questions counsel failed to ask the jury panel or which questions counsel asked and should not have asked. This claim is legally insufficient. Ragsdale v. State, supra.
Defendant next alleges that counsel never specifically objected to Detective Smith testifying as to the contents of the pilot's statement, causing the loss of the issue on appeal. Defendant did object to Detective Smith testifying about the statements of the other witnesses. (RST 2352-53, 2363-64, 2386-88). Again, counsel's allegations are conclusory and failed to allege the actual prejudice suffered by the Defendant inasmuch as the Supreme Court addressed the majority of Detective Smith's hearsay testimony and found that the Court did not abuse its discretion. Knight v. State, 746 So.2d at 430. This claim is legally insufficient. Ragsdale v. State, supra.
In paragraph 33 Defendant alleges many things in brevity. In addition to the allegation as to Detective Smith he alleges that counsel failed to object to the prosecutor's comments on future dangerousness, as noted, the Florida Supreme Court concluded that the State did not impermissibly inject Knight's future dangerousness as an unlawful non-statutory aggravating circumstance sufficiently to constitute fundamental error. Knight v. State, 746 So.2d 423, 431, FN10.
Defendant also alleges counsel was ineffective for opening the door on rebuttal for Dr. Miller's testimony. Defendant does *404 not allege specifically how counsel did this, how it prejudicially affected him, or what Dr. Miller's harmful testimony was. This claim along with the following one that re-sentencing counsel also failed to object to improper comments and questions posed to defense witnesses are not alleged with enough specificity but are conclusory and are insufficient to support an evidentiary hearing. Kennedy v. State, 547 So.2d at 913.
Defense counsel next alleges that at re-sentencing counsel failed to object to improper and questions poised to defense experts by the State and irrelevant and inflammatory comments and arguments resulting in prejudice to Mr. Mohammed. This claim is insufficient in that the Supreme Court in its opinion indicated that even if the issue was properly preserved, the Court would still find no error. Knight v. State, 746 So.2d at 433.
As to the claim that counsel failed to object the State discussed the fact that Dr. Fisher was hired by CCR, the record shows that defense counsel did object. (RST 2541-44).
Defendant next alleges that counsel was ineffective for failing to seek an instruction on merger but defendant based on all the aggravators that were found by the jury, fails to allege how the he failure to give the merging instruction undermined the liability of the jury sentencing recommendation. Consequently, this conclusory allegation is insufficient to warrant an evidentiary hearing. Ragsdale v. State, supra.
Defendant next alleges that counsel was ineffective in failing to challenge the use of the Bradford County case. This claim is without merit as the conviction was valid and counsel cannot be ineffective for failing to challenge a valid conviction, as noted often in this Order. Kokal v. Dugger, 718 So.2d at 143.
Defendant further in a similar light again alleges counsel was ineffective for failing to present evidence about his psychological state at the time of the Bradford County murder. This evidence was presented at re-sentencing RST 2233-2301, 2555-56, 2874-78, 3387-3402. All other remaining allegations in this claim that have not specifically been addressed are conclusory in nature and fail to specifically plead any prejudice sufficient to warrant an evidentiary hearing. Kennedy v. State, 547 So.2d at 913.

CLAIM IV
MR. MUHAMMAD WAS DENIED HIS RIGHTS UNDER AKE V. OKLAHOMA AT HIS RE-SENTENCING. WHEN COUNSEL FAILED TO OBTAIN AN ADEQUATE MENTAL HEALTH EVALUATION AND FAILED TO PROVIDE THE NECESSARY BACKGROUND INFORMATION TO THE MENTAL HEALTH CONSULTANTS, ALL IN VIOLATION OF MR. MUHAMMAD'S RIGHTS TO DUE PROCESS AND EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATE CONSTITUTION, AS WELL AS HIS RIGHT UNDER THE FIFTH, SIXTH AND EIGHT AMENDMENTS.
Defendant alleges that the mental health experts were not provided with necessary background information. Defendant does not allege what necessary background information was not provided to what expert. As such, the claim is facially insufficient and Defendant is not entitled to an evidentiary hearing. Kennedy v. State, 547 So.2d at 913.
Defendant also fails to allege that the opinion of the experts would change if *405 he/she had the background information. There is no prejudice if the opinion would not change. Oats v. Dugger, 638 So.2d 20 (Fla.1994). If the provision of background information would not change an experts opinion, counsel cannot be ineffective in failing to provide the information. Breedlove v. State, 692 So.2d 874 (Fla.1997).
If these allegations were sufficiently alleged, the allegations would still be refuted by the record. Dr. Fisher testified that he had been provided with 6 full boxes of background materials. (RST 2511-13). Dr. Kirwan testified that he reviewed the report of Defendant's hospitalization. (RST 2749-52). Dr. Carbonell stated that she reviewed voluminous records. (RST 2848) Dr. McClane stated that he reviewed documents. (RST 2949-51) Dr. Toomer stated that he reviewed numerous documents. (RST 3038-39).
Defendant again alleges that the jury did know about his bizarre behavior, drug use, devastating abandonment by his wife, at he was beaten with palmetto fronds, Mary Ann's rape, and other abuse during his childhood. As noted in Claim III, this is clearly refuted by the record, as the Florida Supreme Court notes all this in it's opinion. Knight, 746 So.2d at 428-29.

CLAIM V
FLORIDA'S SENTENCING PROCEDURE REQUIRING ONLY A BARE MAJORITY OF JURORS TO RECOMMEND DEATH VIOLATES 921.141, FLORIDA STATUTES, ARTICLE 1, SECTION 17 OF THE FLORIDA CONSTITUTION AND AMENDMENTS SIXTH, EIGHTH, AND FOURTEENTH OF THE UNITED STATES CONSTITUTION. MR MUHAMMAD'S COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THIS ISSUE.
Defendant in this claim alleges that anything less than a unanimous vote for death by the jury violates the dictates of Apprendi v. New Jersey, [530 U.S. 466,] 120 [S.]Ct. 2348[, 147 L.Ed.2d 435] (2000).
This claim is lacking in merit as no State has extended the holding in Apprendi v. New Jersey, supra, to capital sentencing schemes and the plain language of Apprendi indicates that it is not intended to apply to capital schemes. Mills v. Moore, 786 So.2d 532, 536-537 (Fla.2001). Moreover, couching the Aprendi[Apprendi] claim in light of the Ring v. Arizona decision [536 U.S. 584,] 122 Sup.Ct. 2428[, 153 L.Ed.2d 556] (2002) is equally unavailing. The Florida Supreme Court has recently addressed the issue of the applicability of Ring v. Arizona to Florida sentencing scheme and has found that the Florida scheme continues to meet constitutional muster. Bottoson v. Moore, [833 So.2d 693,] 27 Fla. L. Weekly S891 (Fla.2002); King v. Moore, 831 So.2d 143 (Fla.2002). It is unfathomable to believe that the Unites States Supreme Court would have lifted the stays of execution imposed pending the Ring decision thereby allowing the execution of King and Bottoson if the U.S. Supreme Court had determined that Ring invalidated the death sentences imposed in those cases and/or the statutory scheme being used in Florida. Additionally, the U.S. Supreme Court refused to intercede and allowed the execution of King by denying certiorari in connection with the then pending active death warrant within the last several months. King v. Moore, [537 U.S. 1069,] 123 S.Ct. 662[, 154 L.Ed.2d 563] (2002) (cert.denied). Consequently, counsel cannot be ineffective for failing to raise a non-meritorious issue and accordingly this claim is denied without evidentiary hearing.

*406 CLAIM VI
THE STATE'S USE OF MISLEADING TESTIMONY AND IMPROPER ARGUMENT AND FAILURE TO DISCLOSE MATERIAL EXCULPATORY INFORMATION TO MR. MUHAMMAD VIOLATED BRADY V. MARYLAND, U.S. V. GIGLIO AND THE CONSTITUTIONAL RIGHTS OF MR. MUHAMMAD UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS. MR. MUHAMMAD'S COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING TO THE IMPROPER CONDUCT BY THE STATE AND RENDERED INEFFECTIVE BY THE STATE'S ACTIONS. MR. MUHAMMAD WAS DENIED A PROPER ADVERSARIAL TESTING.
Defendant alleges that the State failed to disclose exculpatory evidence that was relevant to his state of mind during the Burke offense. (Bradford County). This issue was addressed by the Florida Supreme Court in Muhammad v. State, 603 So.2d 488, 489 (Fla.1992), when the Court remanded the issue to the trial Court for an evidentiary hearing. A defendant cannot show a Brady violation has occurred if the defendant knew of the existence of the evidence or in fact had the evidence. Maharaj v. State, 778 So.2d 944, 954 (Fla. 2000). Quoting Occhicone v. State, 768 So.2d 1037, 1042 (Fla.2000). Since this issue had been remanded for an evidentiary hearing, defendant cannot now claim the State withheld information concerning his state of mind and moreover, this information was available to the defendant prior to the re-sentencing.
The defendant also alleges that the State failed to disclose evidence that the defendant was abandoned by his wife shortly before the offense. Defendant certainly should have known of the existence of this evidence and such alleged failure to disclose by the State, assuming said evidence was exculpatory or impeachment value, is not a Brady violation.
The defendant also asserts that the State did not disclose information that the defendant was aware that the police were pursuing him. Again, the defendant himself is in a far better position than the State to have knowledge whether the defendant himself was aware of the police pursuit. The State did disclose evidence regarding the police pursuit. Terry Nelson of the FBI did testify regarding the surveillance of the defendant and his car. (RST 2033-2088). Detective Smith also testified following his review of the prior testimony and police reports (RST 3550-3558). The evidence claimed by the defendant having been disclosed or otherwise known or available to him, no Brady violation has occurred. Accordingly, this claim is denied without evidentiary hearing.

CLAIM VII
THE PROSECUTOR'S INFLAMMATORY AND IMPROPER COMMENTS AND ARGUMENTS RENDERED MR. MUHAMMAD'S DEATH SENTENCE FUNDAMENTALLY UNRELIABLE IN VIOLATION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO OBJECT, THEREBY DENYING MR. MUHAMMAD HIS RIGHTS UNDER THE SIXTH AMENDMENT AND HIS RIGHT TO A RELIABLE DIRECT APPEAL.
In this claim, the defendant alleges that prosecutors urged consideration of improper matters, misstated the law, and injected emotion into the proceedings without objection *407 of the trial counsel. The Florida Supreme Court noted in its opinion that counsel failed to object to these comments. Knight v. State, 746 So.2d at 433. The defendant in his motion having noted that counsel failed to object has now couched his arguments in terms of ineffective assistance of counsel for failure to object. The defendant in his motion claims that the resulting prejudice is that counsel was ineffective in that Mr. Muhammad was barred from having the issue reviewed on direct appeal. The Florida Supreme Court, however, in the next paragraph stated:
Even if this issue was properly preserved, we still would find no error. Although one of the cited prosecutor's comments regarding the value of Knight's and victim's lives was clearly improper, see Urbin, 714 So.2d at 420-21, we conclude this isolated instance of misconduct was not egregious enough to warrant voiding of the entire proceeding.
Knight v. State, 746 So.2d at 433.
Defendant in his motion concedes and acknowledges that the Supreme Court ruled that certain comments were clearly error, however the misconduct was not enough to void the entire proceedings. Couching the claims now as ineffective assistance of counsel on the same issues to which the Supreme Court has indicated would be no error does not sufficiently plead a claim for ineffective assistance of counsel. Accordingly, this claim is denied without an evidentiary hearing.

CLAIM VIII
MR. MUHAMMAD'S EIGHTH AMENDMENT RIGHTS WERE VIOLATED BY THE SENTENCING COURT'S REFUSAL TO FIND AND WEIGH THE MITIGATING CIRCUMSTANCES SET OUT IN THE RECORD. THE RESENTENCING COURT FAILED TO RENDER CONSTITUTIONALLY MANDATED INDIVIDUALIZED SENTENCING REQUIRED.
Defendant in this claim alleges that the sentencing court merely summed up the non-statutory mitigating factors into three generalized areas and failed to consider the various statutory and non-statutory mitigation presented. All these claims generally should be raised on direct appeal and are procedurally barred, Roberts v. State, 568 So.2d 1255, 1257-1258 (Fla. 1990). A review of the Supreme Court's opinion indicates that the issue of the trial court's review of proffered mitigation and aggravators was addressed by the Supreme Court. In fact, the Supreme Court noted:
The trial judge's lengthy and detailed sentencing order, replete with citations to the record and case law, is a comprehensive evaluation of all salient weighing factors. The trial specified the sometimes conflicting evidence presented, analyzed the evidentiary basis of the proposed aggravators, evaluated the proffer mitigators and weighed those he found established. He further assessed the credibility of the expert witnesses, assigned weight to the expert opinions, and ruled accordingly. Consequently, Knight is hard pressed to show that the trial court erred in carrying out its responsibility to carefully consider each of the relevant aggravators and mitigators and assign proportion and weight to each.
Knight v. State, 746 So.2d at 435.
Additionally, the defendant never pleads or states what non-statutory mitigating circumstances the trial court failed to consider. This claim is facially insufficient. Ragsdale v. State, 720 So.2d 203, 207 (Fla. *408 1998). Accordingly, this claim is denied without evidentiary hearing.

CLAIM IX
THE INTRODUCTION OF NON-STATUTORY AGGRAVATING FACTORS SO PERVERTED THE SENTENCING PHASE OF MR. MUHAMMAD'S TRIAL THAT IT RESULTED IN THE ARBITRARY AND CAPRICIOUS IMPOSITION OF THE DEATH PENALTY, IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.
The defendant alleges that the State improperly presented and argued to the jury non-statutory aggravators. The defendant raised these issues on direct appeal and the Florida Supreme Court indicated that there is no such thing as a non-statutory aggravating factor in Florida, and the Court found that the allegations raised did not present fundamental error. In so doing the Court stated
Although the comment approaches the border of impropriety, and was probably subject to a valid objection, we conclude that the State did not impermissibly inject Knight's `future dangerousness' into the proceeding as a non-lawful, non-statutory aggravating circumstance sufficiently to constitute fundamental error.
Knight v. State, 746 So.2d at 43-1[431], n. 10.
As these issues were raised on appeal and having been addressed by the Supreme Court, they are procedurally barred. Cherry v. State, 659 So.2d 1069 (Fla.1995). Accordingly, this claim is denied without an evidentiary hearing.

CLAIM X
MR. MUHAMMAD'S SENTENCING JURY WAS IMPROPERLY INSTRUCTED ON AGGRAVATING FACTORS DUE TO THE VAGUENESS OF INSTRUCTIONS AND THE FACT THAT THE AGGRAVATING FACTORS DID NOT APPLY IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS.
In this claim, defendant alleges that the instructions and the aggravators were incorrectly given or applied. These arguments concerning jury instructions on all the aggravators, the lack of evidence supporting same, the improper giving of certain instructions, prior violent felony conviction as to the Bradford County case, and the finding of HAC, were all raised on appeal and except for the HAC aggravator, were rejected by the Supreme Court in its opinion. Knight v. State, 746 So.2d at 434. Moreover, while the Supreme Court agreed on direct appeal that the finding of the HAC aggravator was not supported by the record, the Court then found the error to be harmless in view of the finding of five (5) other valid aggravators. Knight v. State, 746 So.2d at 435-436.
The defendant next alleges that because the jury was instructed on an inapplicable factor, there was an unlawful weighing, an extra thumb on the scale so to speak, in violation of the principles stated in Sochor v. Florida, 504 U.S. 527[, 112 S.Ct. 2114], [119 L.Ed.2d 326] (1992), and Espinosa v. Florida, [505 U.S. 1079,] 112 S.Ct. 2926[, 120 L.Ed.2d 854] (1992). The Florida Supreme Court subsequent to these cases addressed the issue a proper jury instruction given on HAC, even if HAC could not have existed as a matter of law in Johnson v. Singletary, 612 So.2d 575 (Fla.1993).
In Espinosa the Supreme Court held invalid a standard jury instruction on *409 the aggravating factor of heinous, atrocious, or cruel. The improper instruction had defined the factor as "especially wicked, evil, atrocious or cruel." Espinosa, 505 U.S. at 1080, 112 S.Ct. at 2927. Thus, under Sochor and Espinosa, an error would exist if the jury was instructed improperly on the heinous, atrocious or cruel factor, whether or not the trial court in its written findings found the same factor to be present. Conversely, no error is present if the jury was properly instructed, even though the heinous, atrocious, or cruel factor could not have existed as a matter of law.
Johnson, 612 So.2d at 576-577.
The defendant next alleges that the sentencing court erred in allowing Sidney and Lillian Gans' contemporary deaths to serve as aggravating factors for one another. This issue was raised on appeal and rejected by the Supreme Court. Knight v. State, 746 So.2d at 434. The defendant also alleges that the court erred in allowing the Bradford County case to be used as aggravation. That conviction is not an invalid conviction and this issue has been previously addressed in this order as being meritless.
The defendant next alleges the instruction on pecuniary gain is unconstitutionally vague. This claim is meritless in that financial gain does not have to be the sole motive for the pecuniary gain aggravator to apply. Pecuniary gain is not inconsistent with the finding of seeking to avoid arrest. Card v. State, 803 So.2d 613, 626, 628 & n. 16 (Fla.2001).
Additionally, the Supreme Court noted in its opinion that the evidence outlined above supports the judge's findings that the murders were committed for pecuniary gain, especially the fact that even in flight, Knight still had the presence of mind to retain the paper bag containing $50,000.00. Knight v. State, 746 So.2d at 435.
Defendant next alleges that the aggravator of kidnapping was not supported by the evidence and not applicable in this case. Defendant alleges that it is a doubling of the avoiding arrest aggravator. As such, defendant alleges that counsel was ineffective for failing to object. In the Supreme Court's opinion discussing aggravators, the Supreme Court indicated that there could be little doubt that the murders were committed in the commission of a kidnapping. Additionally, the court found that there was sufficient evidence including circumstantial evidence to support the trial court's finding of the avoiding arrest aggravator. Knight v. State, 746 So.2d 423, 434, 435 (Fla.1990). It is clear that, "the State need not charge and convict of felony murder or any felony in order for the court to find that the aggravating factor of murder committed during the course of a felony was established." Occhicone v. State, 570 So.2d 902, 905 (Fla. 1990).
The defendant next alleges that it was error not to have a sentencing verdict form to indicate whether the jury found a kidnapping beyond a reasonable doubt in light of Apprendi, supra. Issues regarding verdict forms and necessary vote counts could have and should have been raised on appeal and are procedurally barred. Francis v. Barton[, 581 So.2d 583 (Fla.1991)], supra.
Accordingly, this claim is denied without evidentiary hearing.

CLAIM XI
MR. MUHAMMAD'S SENTENCING JURY WAS MISLED BY COMMENTS, QUESTIONS, AND INSTRUCTIONS THAT UNCONSTITUTIONALLY AND INACCURATELY DILUTED THE JURY'S SENSE OF *410 RESPONSIBILITY TOWARDS SENTENCING IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
The defendant alleges that the jury was not properly instructed as to its role in the sentencing process and that counsel was ineffective for failing to object to these comments. Claims of error based on Caldwell v. Mississippi, 472 U.S. 320[, 105 S.Ct. 2633, 86 L.Ed.2d 231] (1985) are procedurally barred in post conviction motions. Oats v. Dugger, 638 So.2d 20, 21 & n. 1 (Fla.1994).
The defendant argued that the jury was told they recommended a sentence to the judge, that their recommendation was advisory and that the judge alone had the responsibility to determine the sentence to be imposed for first degree murder and as such defense position is that a Caldwell error was committed and that the jury was misled regarding its responsibility for its decision. The Florida Supreme Court has recognized that the jury's penalty phase decision is advisory and that the judge makes the final sentencing decision. Combs v. State, 525 So.2d 853, 855-58 (Fla. 1988). As such, the jury in this case was properly informed and counsel cannot be ineffective for failing to object to these instructions.
Accordingly, this claim is denied without an evidentiary hearing.

CLAIM XII
MR. MUHAMMAD'S SENTENCE OF DEATH VIOLATES THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS BECAUSE THE LAW SHIFTED THE BURDEN TO MR. MUHAMMAD TO PROVE THAT DEATH WAS INAPPROPRIATE AND BECAUSE THE TRIAL COURT EMPLOYED A PRESUMPTION OF DEATH IN SENTENCING MR. MUHAMMAD.
The defendant alleges that the well established principle that the State must establish the existence of one or more aggravating circumstances before the death penalty can be imposed was not applied and that the court believed that the defendant had the burden of proving whether he should live or die. On direct appeal, the defendant aserted[asserted] that the jury instruction that the mitigation had to outweigh the aggravation unconstitutionally shifted the burden of proof. Knight v. State, 746 So.2d at 429 nn. 6 & 7. As this issue was raised on appeal, it is procedurally barred. Cherry v. State, 659 So.2d 1069 (Fla.1995). Additionally, the burden shifting argument was rejected and counsel's failure to object was rejected.
The claim that the sentencing court unreasonably believed that only the mitigating evidence that rose to the level of "outweighing" aggravation need be considered and is demonstrated in his sentencing order is completely lacking in merit and made in bad faith. Defendant does not state where in the well thought out and well reasoned sentencing order where the unreasonable beliefs are demonstrated. To the contrary, the sentencing order on page 38 states:
In weighing the aggravating factors against the mitigating factors the court understands that the process is not simply an arithmetical one. It is not enough to weigh the number of aggravators against the number of mitigators, the process is more qualitative than quantitative. The court must and does look to the nature and quality of the aggravators and the mitigators which is has found to exist.
*411 Moreover, counsel could not be ineffective because he objected to the instruction, asserting that it unconstitutionally shifted the burden of proof. RST 3689-92. Accordingly, this claim is denied without an evidentiary hearing.

CLAIM XIII

FLORIDA'S STATUTE SETTING FORTH THE AGGRAVATING CIRCUMSTANCES TO BE CONSIDERED IN A CAPITAL CASE IS FACIALLY VAGUE AND IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS. THE FACIAL INVALIDITY OF THE STATUTE WAS NOT CURED IN MR. MUHAMMAD'S CASE BECAUSE THE JURY DID NOT RECEIVE ADEQUATE GUIDANCE. AS A RESULT, MR. MUHAMMAD'S SENTENCE OF DEATH IS PREMISED UPON FUNDAMENTAL ERROR THAT NOW MUST BE CORRECTED.
Defendant alleges in this claim that the aggravating circumstances upon which the jury was instructed were unconstitutionally vague and overbroad, and that the jury must receive a constitutionally adequate narrowing instruction and that the state failed to prove the aggravating circumstances beyond a reasonable doubt. It is important to note that the issues concerning the sufficiency of the evidence and the aggravating circumstances were addressed by the Supreme Court in its opinion. The Court found the evidence was sufficient to support all the aggravators except HAC. Knight v. State, 746 So.2d at 435-436. Additionally, the Florida Supreme Court has previously rejected vagueness and over-breadth challenges for the four remaining aggravators. Card v. State, 803 So.2d 613, 628 (Fla.2001) (pecuniary gain, avoid arrest, during the course of a felony); Gaskin v. State, 737 So.2d 509, 513 n. 7 (Fla. 1999) (prior violent felony).
Lastly, defendant does not specifically allege which aggravators were vague and overbroad. Accordingly, the claim is facially insufficient and as noted above it is procedurally barred and without merit. Accordingly, this claim is denied without an evidentiary hearing.

CLAIM XIV

MR. MUHAMMAD IS INNOCENT OF THE DEATH PENALTY
The defendant next alleges that he is innocent of the death penalty as he is innocent of first degree murder due to the fact that he was laboring under a severe mental illness that rendered him legally insane. The defendant does not allege what evidence is available that proves any of the aggravating circumstances were improperly found. Conclusory allegations are insufficient to state a claim for relief in a post-conviction motion. Jackson v. Dugger, 633 So.2d 1051, 1054 (Fla.1993).
In the event that this claim is not procedurally barred, it is not supported by the facts of this case and the law. The defendant's underlying conviction in this case has long been final. The defendant claims that he was insane at the time of the murders is time barred in that it should have/could have been raised on appeal and again merely conclusory in its allegations. As the record reflects, the defendant was evaluated by numerous mental health experts at many stages throughout the many years of these proceedings.
Insofar as the defendant's allegations that he is innocent of the eligibility for the death sentence, the defendant must show based on the evidence proffered plus all record evidence a fair probability that a rational fact finder would have entertained a reasonable doubt as to the existence of *412 those facts which are pre-requisite under state or federal law for the imposition of the death penalty. Sawyer v. Whitley, 505 U.S. 333, 346[, 112 S.Ct. 2514, 120 L.Ed.2d 269] (1992). The defendant must make a colorable showing that he is actually innocent of the death penalty by presenting evidence that an alleged constitutional error implicates all of the aggravating factors found to be present by the sentencing body. That is, but for the constitutional error, the sentencing body could not have found any aggravating factors and thus, petitioner was ineligible for the death penalty. Johnson v. Singletary, 938 F.2d 1166, 1183 (11th Cir.1991) (en banc).
Inasmuch as the Florida Supreme Court has found that more than one aggravator was properly found, Knight v. State, supra, this claim is denied without evidentiary hearing.

CLAIM XV

MR. MUHAMMAD WAS DENIED HIS RIGHTS UNDER THE FOURTH, FIFTH, SIXTH EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND THE CORRESPONDING PROVISIONS OF THE FLORIDA CONSTITUTUION[CONSTITUTION], WHEN THE PROSECUTOR IMPERMISSIBLY SUGGESTED TO THE JURY THE LAW REQUIRED THAT IT RECOMMEND A SENTENCE OF DEATH.
The defendant alleges that during voir dire the prosecutor repeatedly asked prospective jurors if they could vote for a death sentence if the aggravating circumstances required or called for that sentence. Defendant does not specifically state what questions were asked or what comments were made in connection with that question. This claim is facially insufficient. Ragsdale v. State, 720 So.2d 203, 207 (Fla.1998) Additionally, issues regarding comments allegedly made by the state could have and should have been raised on appeal as other statements concerning statements by the prosecutor were raised and dealt with on appeal by the Supreme Court. Knight v. State, supra.
Lastly, while the statements may be misstatement of the law, they were not repeated by the trial court, and the jury was properly instructed by the trial court. Henyard v. State, 689 So.2d 239 (Fla.1996); Floyd v. State, 2002 WL 1926233 (Fla. 2002). The Supreme Court addressed similar arguments and found them to be harmless.
Accordingly, this claim is denied without an evidentiary hearing.

CLAIM XVI

MR. MUHAMMAD'S COUNSEL IS PROHIBITED FROM INTERVIEWING JURORS IN VIOLATION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. AS A RESULT OF THE RULE, MR. MUHAMMAD IS PREVENTED FROM FULLY PRESENTING IDENTIFIABLE AND VALID CLAIMS FOR POST CONVICTION RELIEF.
The defendant argues that Rule 4.3.5(d)(4), Rules Regulating the Florida Bar should be declared unconstitutional by this court as it prevents him from investigating a claim of jury misconduct or racial bias that may have been inherent in the jury's verdict. The defendant wishes to conduct juror interviews for the purpose of determining whether overt acts or external influences contributed to this conviction and verdict of death. While issues concerning the exclusion of jurors were addressed on appeal and any effect on any potential jurors that could have been had, *413 there is not a claim in defendant's motion alleging with specificity or sufficiently any claim which the defendant seeks to interview any of the jurors on. Any claims concerning juror issue were and should have been raised on appeal and accordingly are procedurally barred. Young v. State, 739 So.2d 553; Ragsdale v. State, 720 So.2d 203, 204-205 n. 1 & 2 (Fla.1998).
The Florida Supreme Court recently readdressed this issue:
Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar prohibits a lawyer from initiating communication with any juror regarding the trial with which the lawyer is connected, except to determine whether the verdict may be subject to legal challenge. The rule provides that the lawyer `may not interview the jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist.' Before conducting such an interview, the lawyer must file a notice of intent to interview setting forth the name of the juror to be interviewed and deliver copies of the notice to the trial judge and opposing counsel a reasonable time before the interview.
In Arbelaez v. State, 775 So.2d 909 (Fla. 2000), we found a similar cliam[claim] procedurally barred because it was not raised on direct appeal. Like Arbelaez, Vining did not allege any particular reasons t believe that the verdict might be subject to legal challenge. `Instead, he appears to be complaining about a defendant's inability to conduct `fishing expedition' interviews with the jurors after a guilty verdict is returned. Thus, even if the claim were not procedurally barred, [the defendant] would not be entitled to relief on the grounds he asserted and no evidentiary hearing was required on this claim.' Id. at 920. Further, this Court has cautioned `against permitting jury interviews to support post-conviction relief' for allegations which focus upon jury deliberations. Johnson v. State, 593 So.2d 206, 210 (Fla.1992). The lower court's summary denial of this claim is affirmed.
Vining v. State, 827 So.2d 201, 216 (Fla. 2002).
Accordingly, this claim is denied without an evidentiary hearing.

CLAIM XVII

JUROR MISCONDUCT OCCURRED IN MR. MUHAMMAD'S RESENTENCING IN VIOLATION OF THE SIXTH, EIGHTH, FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE CORRESPONDING PROVISIONS OF THE FLORIDA CONSTITUTION.
As with claim XVI the defendant is alleging juror misconduct, in that several jurors had seen the newspapers and jurors inadvertently overheard a conversation regarding the defendant in an elevator. This matter was litigated on direct appeal where the defendant claimed it was error to remove the jurors due to the conversation with court personnel. The Florida Supreme Court found no abuse of discretion in the removal of these jurors. Knight v. State, 746 So.2d at 433. As this claim was raised on appeal it is procedurally barred. Cherry v. State, 659 So.2d 1069 (Fla.1995).
Additionally, as for the issue concerning newspaper allegations, the record reflects that the jurors were interviewed by the court. (RST 2823-2839). The court found the answers credible and the defendant objected to the removal as one of the jurors was an African American. This claim is refuted by the record. Additionally, it could have been raised on direct *414 appeal and accordingly it is procedurally barred.
Accordingly, this claim is denied without evidentiary hearing.

CLAIM XVIII

FLORIDA'S CAPITAL, SENTENCING STATUTE IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED IN THIS CASE BECAUSE IT FAILS TO PREVENT THE ARBITRARY AND CAPRICIOUS IMPOSITION OF THE DEATH PENALTY, AND IT VIOLATES THE CONSTITUTIONAL GUARANTEES OF DUE PROCESS AND PROHIBITING UNUSUAL PUNISHMENT.
The defendant alleges that the capital sentencing scheme constitutes cruel and unusual punishment and it is unconstitutional. The Supreme Court has held that the death penalty is not cruel and unusual punishment. Provenzano v. State, 739 So.2d 1150 (Fla.1999); Jones v. State, 748 So.2d 1012 (Fla.1999).
He also alleges that the statute does not adequately define the terms outweigh, sufficient aggravating circumstances, individual aggravating circumstances and has vague jury instructions. Many of these claims have previously been raised and/or are meritless. Additionally, the issue of vagueness on some of the jury instructions was addressed by the Supreme Court in Knight v. State, where it summarily rejected the defendant's claim of vagueness as to the HAC construction. Knight v. State, 746 So.2d 423, n. 7 claim XIII. All issues raised in this claim are procedurally barred as they could have and should have been raised on appeal. Byrd v. State, 597 So.2d 252 (Fla.1992). This claim also lacks merit and has been rejected by the Florida Supreme Court numerous times. Johnson v. State, 660 So.2d 637, 647-48 (Fla.1995); Wournos[Wuornos] v. State, 644 So.2d 1012, 1020 (Fla.1994).

CLAIM XIX

REQUIRING MR. MUHAMMAD, A DEATH SENTENCED INDIVIDUAL, TO FILE A MOTION UNDER RULE 3.851 OF THE RULES OF CRIMINAL PROCEDURE ONE YEAR AFTER HIS SENTENCE HAS BECOME FINAL VIOLATES HIS RIGHTS OF DUE PROCESS AND EQUAL PROTECTION OF THE LAW UNDER THE EIGHTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION. THIS RULE ALSO DENIES MR. MUHAMMAD THE EFFECTIVE ASSISTANCE OF COUNSEL AND ACCESS TO THE COURTS OF THE STATE OF FLORIDA AND THE UNITED STATES, AS WELL AS HIS RIGHT TO PETITION FOR A WRIT OF HABEAS CORPUS.
The defendant alleges that the one year time period in Florida Rules of Criminal Procedures 3.85-1[3.851] is unconstitutuional[unconstitutional] and prevents him from competent counsel as his appointed counsel is too busy. The defendant previously alleged that being on death row for many years was unconstitutionally cruel. This Rule was amended to bring finality to capital cases in a more expeditious manner. That individuals sentenced to death will not languish on death row. The defendant's claim was rejected by the Florida Supreme Court. In Vining v. State, 827 So.2d 201 (Fla.2002) the Supreme Court stated that,
The court has repeatedly rejected arguments of the one (1) year time limit imposed by Florida Rules of Criminal Procedures 3.851 is unconstitutional, citing Arbelaez v. State, 775 So.2d 909, 919 *415 (Fla.2000); Koon v. Dugger, 619 So.2d 246, 251 (Fla.1993). To the extent that Vining claims that counsel rendered ineffective assistance because of the Rule, we agree with the post-conviction court's assessment that the `claims of ineffective assistance of post-conviction counsel do not present a valid basis for relief, citing Lambrix v. State, 698 So.2d 247, 248 (Fla.1996).
Vining v. State, at 215-216
Defendant in this case as reflected by the record filed the initial shell motion within one year of the affirmance of the resentencing proceeding, on or about November of 2000. This court held various hearing in the interim concerning any motions addressed by the defense in connection with the preparation of their motion for post-conviction relief. The defendant's amended motion for post-conviction relief was filed on March 23, 2002, after numerous extensions.
Accordingly, this claim is denied without an evidentiary hearing.

CLAIM XX

JUDICIAL BIAS THROUGHOUT MR. MUHAMMAD'S RE-SENTENCING CONSTITUTES FUNDAMENTAL ERROR AND DENIED MR. MUHAMMAD'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. MR. MUHAMMAD WAS DENIED A FAIR ADVERSARIAL TESTING.
The defendant alleges that the trial court was biased against him because he is mentally ill and had him removed from the courtroom. The defendant complains that the trial court was biased in that he found defendant's lack of control in the courtroom to the will rather than mental illness. Initially this court will note that adverse rulings do not make a judge biased. Rivera v. State, 717 So.2d 477, 480 (Fla.1998).
Additionally, the issue of the defendant's removal from the courtroom was raised on appeal and affirmed where the Supreme Court found that the trial judge acted within his discretion in repeatedly removing Knight from the courtroom, especially considering the testimony of numerous guards and jailhouse officials that Knight's out of court demeanor was completely at odds with his in court histrionics. Knight v. State, 746 So.2d at 434 (n.12 & 13).
The defendant also alleges that the sentencing court was biased in that he called the defense expert a pain in the neck. As can be seen from the context in which the statement occurred, the record refutes any claim of bias against the defendant but rather shows that it was a scheduling problem as to the convenience or the inconvenience of the doctor scheduled. RST. 2820-2824, 2452, 2500, 2544, 2664-65. Accordingly this claim is denied without an evidentiary hearing.

CLAIM XXI

MR. MUHAMMAD WAS ABSENT FROM CRITICAL STAGES OF HIS RESENTENCING PROCEEDING. AS A RESULT MR. MUHAMMAD'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE VIOLATED.
The defendant claims that due to his mental illness, he was unable to conduct himself during the trial. The defendant again alleges, as he did in the previous claim that the trial court predetermined that his actions were those of will not mental illness. Issues regarding a denial of a defendant's right to be present are issues that could have and should have been *416 raised on appeal. Vining v. State, 827 So.2d 201, 217 (Fla.2002). As this claim could have and should have been raised on appeal, it is procedurally barred. Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995).
Additionally, the claim is meritless. As noted by the Florida Supreme Court,
Our review of the record reveals that the trial judge bent over backwards to accord Knight his right to be present in the courtroom. Despite rambling monologues and general obstructionist conduct, the trial judge let Knight return to the courtroom every morning for another opportunity to behave properly and remain for the proceeding. However, without exception, Knight daily refused to obey the judge's instruction that he remain silent until the proper time. The judge was remarkably patient, even allowing a lengthy, uninterrupted monologue by Knight on the second day of voir dire, January 24, 1996. Shortly thereafter, Knight was again removed from the courtroom for refusing to obey the judge's instructions. Even then, the judge resolved to give Knight a daily opportunity to act acceptably in court. [FN 11]
FN11. Immediately after Knight's second removal from the courtroom, the following exchange took place between the prosecutor, Mr. Laeser, and the trial judge:
Mr. Laeser: I think the first thing that concerns me is whether or not we are going to spend an hour every morning going through the theater of the absurd or whether this proceeding is not going to have the benefit of Mr. Knight on future days.
The Court: No. I am afraid that we are going to have to  it was not an hour. I actually counted 25 minutes. I feel obligated to ensure that no other judge is ever going to have to go through this, and I want the defendant here every day. If he can behave and he can announceor it appears that he can behave, we will let him stay.
Moreover, the judge's actions were consistent with this Court's case law, as well as United States Supreme Court precedent. See Illinois v. Allen, 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) ("The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trail judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case where a defendant disrupts the proceedings"); Diaz v. State, 513 So.2d 1045, 1047 (Fla.1987) (applying Allen in finding that the "court's obligation to maintain safety and security in the courtroom outweighs, under proper circumstances, the risk that the security measures may impair the defendant's presumption of innocence"); accord Joseph v. State, 625 So.2d 109 (Fla. 3d DCA 1993).
Knight, 746 So.2d at 432.
The trial court heard the testimony of numerous witnesses regarding the in courtroom behavioral difficulties of the defendant. Based on their testimony, the court found the behavior willful. RST 204-282. Defendant also stated that he wanted to waive his right. This claim is lacking in merit. He was removed from the courtroom based on his own behavior and own willful misconduct.
Accordingly, this claim is denied without an evidentiary hearing.

CLAIM XXII

MR. MUHAMMAD'S RE-SENTENCING COUNSEL WAS LABORING UNDER AN ACTUAL CONFLICT OF INTEREST RESULTING IN PREJUDICE *417 TO MR. MUHAMMAD AND IN VIOLATION OF HIS RIGHTS TO THE UNITED STATES CONSTITUTION AND CORRESPONDING FLORIDA LAW.
Defendant again alleges that counsel had a conflict of interest because counsel was in fear of defendant. This claim was raised earlier in this motion. Again, defendant does not identify any specific lapse during the representation that allegedly occurred because of the alleged conflict of interest. It is facially insufficient. Ragsdale v. State, 720 So.2d 203, 207 (Fla.1998).
It is also meritless. Claims of conflict of interest must be based on dual representation and not on conflicts with an attorney's self interest. See Beets v. Collins[Scott], 65 F.2d[F.3d] 1258, 1270-71 (5th Cir.1995).
Accordingly, this claim is denied without an evidentiary hearing

CLAIM XXIII

AN INVALID PRIOR CONVICTION WAS INTRODUCED INTO EVIDENCE AT MR. MUHAMMAD'S RESENTENCING PROCEEDING TO ESTABLISH THE EXISTENCE OF AN AGGRAVATING CIRCUMSTANCE IN VIOLATION OF JOHNSON V. MISSISSIPPI, 486 U.S. 578 (1988), AND DUEST V. SINGLETARY, 997 F.2d 1336 (11th CIR.1993).
Defendant again alleges that his sentencing was premised on an invalid prior conviction, that being the murder of James Burke. (Bradford County case) Claims that a death sentence is invalid because of the alleged invalidity of prior violent felonies are procedurally barred because they could have and should have been raised on appeal. Eutzy v. State, 541 So.2d 1143, 1146 (Fla.1989).
The claim is also legally insufficient. Defendant must show that the prior conviction upon which the prior violent felony aggravator was based has been vacated. Buenoano v. State, 708 So.2d 941, 942 (Fla.1998). The conviction for the murder of Mr. Burke has not been vacated. This claim is lacking merit.
Accordingly, this claim is denied without an evidentiary hearing.

CLAIM XXIV

MR. MUHAMMAD'S SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED BECAUSE NO RELIABLE TRANSCRIPT OF HIS CAPITAL TRIAL EXISTS, RELIABLE APPELLATE REVIEW WAS AND IS IMPOSSIBLE, THERE IS NO WAY TO ENSURE THAT WHICH OCCURRED IN THE TRIAL COURT WAS OR CAN BE REVIEWED ON APPEAL, DUE TO OMISSIONS IN THE RECORD AND THE JUDGMENT AND SENTENCE MUST BE VACATED.
The defendant next alleges that the record in this case is incomplete, inaccurate, and unreliable. Defendant also alleges counsel was ineffective for failing to ensure a reliable transcript. Claims that the record on direct appeal was deficient are issues that could have and should have been raised on direct appeal and are procedurally barred. Muhammad v. State, 603 So.2d 488 (Fla.1992).

CLAIM XXV

NEWLY DISCOVERED EVIDENCE ESTABLISHED THAT MR. MUHAMMAD'S CAPITAL CONVICTION AND SENTENCE ARE CONSTITUTIONALLY UNRELIABLE IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
*418 The defendant alleges it cannot disclose this newly disclosed evidence until there is full chapter 119 compliance. Defendant clearly has failed to allege that evidence was unknown, it could not have been known with due diligence, and it would have produced an acquittal on re-trial. Jones v. State, 591 So.2d 911, 915-916 (Fla.19911[1991]). The claim is facially insufficient. Ragsdale v. State, 720 So.2d 203, 207 (Fla.1998).
Accordingly, this claim is denied without an evidentiary hearing.

CLAIM XXVI

MR. MUHAMMAD'S RIGHT TO DUE PROCESS WAS DENIED WHEN THE TRIAL COURT FAILED TO CONDUCT A RELIABLE COMPETENCY HEARING TO RESOLVE DISPUTED ISSUES OF COMPETENCY CONTRARY TO THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.
In this claim, defendant again brings up issues previously addressed in Claim II, III and IV. As noted earlier in this order, these claims are procedurally barred, facially insufficient, or without merit.
Defendant was evaluated for competency and competency hearings were held. (RSR 1676-1996, RST 75-102). He was again evaluated after an outburst. (RST 174-219). Additionally, competency could have been but was not raised on appeal and it is procedurally barred. Medina v. Singletary, 59 F.3d 1095, 1111 (11th Cir. 1995).
Accordingly, this claim is denied without an evidentiary hearing.

CLAIM XXVII

MR. MUHAMMAD'S EIGHT AMENDMENT RIGHTS AGAINST CRUEL AND UNUSUAL PUNISHMENT WILL BE VIOLATED AS MR. MUHAMMAD MAY BE INCOMPETENT AT THE TIME OF EXECUTION.
The defendant alleges he may be incompetent at the time of his execution. The defendant concedes no death warrant has been signed at this time for defendant and that this claim is not ripe under F.Stat. [§ ]922.07 at this time and that the issue is being raised for preservation purposes.
Accordingly, this claim is denied without an evidentiary hearing.

CLAIM XXVIII

MR. MUHAMMAD'S TRIAL COURT PROCEEDINGS WERE FRAUGHT WITH PROCEDURAL AND SUBSTANTIVE ERRORS WHICH CANNOT BE HARMLESS WHEN VIEWED AS A WHOLE SINCE THE COMBINATION OF ERRORS DEPRIVED HIM OF THE FUNDAMENTALLY FAIR TRIAL GUARANTEED UNDER THE SIXTH, EIGHT, AND FOURTEENTH AMENDMENTS.
In this claim, defendant alleges that the errors previously raised prejudiced him and deprived him of a fair trial. He claims the prosecutor's comments, the aggravating factor, the failure to object before the swearing in of the jury, and all other cumulative errors deprived him of a fair proceeding. As the individual errors alleged are either procedurally barred or without merit, and have been addressed in this order,
This claim is denied without an evidentiary hearing.
WHEREFORE, for all the reasons heretofore stated, defendant's Amended Motion for Post Conviction Relief be *419 and in the same is hereby denied without evidentiary hearing.
Upon appeal of this Order, the Clerk is hereby Ordered to Transport, as part of this Order, to the Supreme Court the following:
1. All of the pleadings filed in connection with this cause.
2. All items upon which in camera review were held by this Court which are submitted contemporaneous with this Order to the Clerk of the Court under seal.
FURTHER ORDERED, that the Clerk of this Court shall serve upon the defendant through counsel, a copy of this Order on Post Conviction Relief, which shall serve to notify the defendant of his right to appeal within 30 days of the rendition of this Order.
DONE and ORDERED, in Chambers, at Miami-Dade County, Florida, this 15th day of January, 2003.
 ____________
 PETER R. LOPEZ
 Circuit Court Judge
NOTES
[1] On October 12, 1980, while on death row, Muhammad fatally stabbed a prison guard, Officer James Burke. Muhammad v. State, 494 So.2d 969, 970 (Fla.1986). This Court affirmed his first-degree murder conviction and death sentence. Id. at 976. Muhammad's subsequent rule 3.850 motion was summarily denied by the trial court. Muhammad v. State, 603 So.2d 488, 488 (Fla.1992). With the exception of Muhammad's claim that the State failed "to disclose exculpatory employee statements in violation of Brady v. Maryland," 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), this Court affirmed the trial court's order. Id. at 489. With respect to the Brady claim, this Court reversed and remanded for an evidentiary hearing. Id. at 490. On remand, the trial court held an evidentiary hearing on the Brady claim, denied Muhammad's motion to vacate his conviction, and entered an order vacating the death sentence and granting a new sentencing hearing. State v. Knight, 866 So.2d 1195, 1198, 1200 (Fla. 2003). On appeal, this Court "affirm[ed] the portion of the trial court's order denying the motion to vacate Muhammad's conviction, but reverse[d] the portion of the trial court's order vacating Muhammad's death sentence and remand[ed] with directions that Muhammad's death sentence be reinstated, and . . . den[ied] the petition for writ of habeas corpus." Id. at 1210. The United States Supreme Court denied Muhammad's petition for writ of certiorari. Muhammad v. Florida, 541 U.S. 1066, 124 S.Ct. 2396, 158 L.Ed.2d 969 (2004).
[2] Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
[3] "The United States Supreme Court has held that a sentencing jury or judge may not preclude from consideration any evidence regarding a mitigating circumstance that is proffered by a defendant in order to receive a sentence of less than death. See Hitchcock v. Dugger, 481 U.S. 393, 394, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)." Globe v. State, 877 So.2d 663, 678 (Fla.2004) (quoting Trease v. State, 768 So.2d 1050, 1055 (Fla.2000)).
[4] Huff v. State, 622 So.2d 982, 983 (Fla.1993) (requiring hearing on postconviction motion in death penalty case to "determin[e] whether an evidentiary hearing is required and to hear legal argument relating to the motion")
[5] In his amended rule 3.850 motion, Muhammad argued that he was entitled to an evidentiary hearing on his numerous claims, renumbered here, that (I) his constitutional rights were violated because (a) the State denied him access to records pertaining to his case; (b) of the State's eight-year delay in resentencing him; (c) the State used misleading testimony and improper argument and failed to disclose exculpatory evidence; (d) the State's improper and inflammatory comments and arguments rendered the death sentence unreliable; (e) the resentencing court failed to find and weigh the mitigating factors; (f) the State's introduction of nonstatutory aggravating factors resulted in the arbitrary and capricious imposition of the death penalty; (g) the State and the resentencing court shifted the burden to Muhammad to prove that death was inappropriate; (h) the aggravating circumstances were vague and overbroad, no narrowing instruction was given, and the State failed to prove the aggravating circumstances beyond a reasonable doubt; (i) the prosecutor suggested that the law required the jurors to recommend a sentence of death; (j) rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar prevented Muhammad's counsel from interviewing jurors; (k) of juror misconduct; (l) the one-year time limit imposed by rule 3.851 prevents Muhammad from obtaining competent counsel; (m) he was denied his right to be present; (n) his resentencing was premised upon an invalid prior conviction; (o) newly discovered evidence establishes that the convictions and sentences are unreliable; (p) no reliable competency hearing was conducted; (II) counsel was ineffective for (a) failing to ensure a timely resentencing proceeding; (b) failing to ensure access to records pertaining to the case; (c) failing to investigate and prepare mitigating evidence; (d) losing the original trial transcript; (e) failing to timely provide materials to the experts; (f) failing to present evidence to the jury and to the mental health experts; (g) failing to object to or preclude inadmissible, irrelevant, and inflammatory testimony, evidence, and argument, causing loss of those issues on direct appeal; (h) failing to conduct an adequate voir dire and exercise peremptory challenges; (i) failing to move for a change of venue; (j) failing to litigate the issue of jury sequestration; (k) failing to move to withdraw from the case; (l) opening the door; (m) failing to request an instruction on merging the aggravators; (n) failing to ensure that a competent, reliable, and timely competency evaluation was performed; (o) failing to adequately litigate the issue of judicial bias; (p) failing to argue that Florida's capital sentencing scheme is unconstitutional; (q) failing to argue that the resentencing court did not find and weigh the mitigating factors; (r) failing to litigate the claim that the State and the resentencing court shifted the burden to Muhammad to prove that death was inappropriate; (s) failing to ensure a reliable transcript; (III) mental health experts were not provided with necessary background information in violation of Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (IV) Florida's capital sentencing scheme is unconstitutional; (V) the instructions and aggravators were incorrectly given or applied; (VI) the jury was not properly instructed as to its role in the sentencing process in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (VII) Muhammad is innocent of the death penalty; (VIII) the resentencing judge was biased; (IX) counsel was laboring under a conflict of interest; (X) the record in this case is incomplete, inaccurate, and unreliable; (XI) he may be incompetent at the time of his execution; and (XII) cumulative error deprived him of a fair proceeding.
[6] Because we conclude that they are procedurally barred, we reject Muhammad's arguments that the following claims were improperly summarily denied: (1) Muhammad's constitutional rights were violated by the State's eight-year delay in resentencing him; (2) the State improperly suppressed exculpatory information regarding Muhammad's mental state at the time of the Burke offense in violation of Brady; (3) Muhammad's constitutional rights were violated because of improper prosecutorial comments; (4) juror misconduct occurred because during the resentencing proceedings jurors were exposed to newspaper articles about the proceedings; (5) Muhammad's constitutional rights were violated because the trial judge was biased; (6) Muhammad's absence from critical stages of his resentencing proceedings violated his constitutional rights; (7) Muhammad's constitutional rights were violated because resentencing counsel was laboring under an actual conflict of interest; (8) Florida's capital sentencing scheme is unconstitutional; (9) the jury was improperly given vague and inapplicable instructions on aggravating factors; (10) the trial court and the State unconstitutionally minimized the jurors' sense of responsibility in violation of Caldwell; (11) the trial court and the State improperly shifted the burden of proof to Muhammad to establish that mitigating factors outweighed the aggravating factors; (12) the statutory aggravating factors are unconstitutionally vague and overbroad; (13) the State's suggestion during voir dire that the jury was required to recommend a sentence of death violated Muhammad's constitutional rights; and (14) the State's introduction of nonstatutory aggravators perverted the resentencing proceeding and resulted in the unconstitutional imposition of the death penalty.
[7] Additionally, we find that the following claims were properly denied without an evidentiary hearing because they are conclusively refuted by the record: (1) Muhammad's constitutional rights were violated because three jurors were exposed to a court employee's comments about Muhammad and because the State questioned a juror's candor; (2) trial counsel failed to obtain an adequate mental health evaluation and failed to provide necessary background information to the mental health experts in violation of Ake; and (3) trial counsel was ineffective for failing to (a) challenge the State's experts; (b) keep up with the original trial transcript; (c) provide defense experts with background materials; (d) present evidence regarding Muhammad's mental state at the time the Ganses were murdered and his deprived and abused childhood; (e) ensure an adequate and timely competency hearing; (f) present Brady evidence from the Burke case.
[8] We conclude that the following claims are facially or legally insufficient as alleged and thus were not improperly summarily denied: (1) trial counsel was ineffective for failing to (a) present evidence that Muhammad was aware of police presence; (b) move for a change of venue; (c) effectively litigate the issue of jury sequestration; (d) attempt to prevent inadmissible testimony and evidence; (e) object to Detective Greg Smith's hearsay testimony as to statements made by the pilot of the Short Takeoff and Landing aircraft; (f) agree to the trial court's offer to have testimony read to the jury in lieu of Detective Smith's testimony; (g) request an instruction on the merging of aggravators; (h) attempt to preclude Dr. Charles Mutter's testimony; and (i) object to the State's inquiry whether defense witnesses had been hired by the Capital Collateral Representative.
[9] Because we conclude that the following claims are without merit as a matter of law, we reject Muhammad's arguments that they were improperly denied without an evidentiary hearing: (1) the State withheld evidence that Muhammad was abandoned by his wife shortly before the Ganses were murdered and that he was aware of ensuing police presence; (2) Muhammad is incompetent to be executed (premature); (3) trial counsel was ineffective (a) because of the State's failure to conduct the resentencing proceedings within a reasonable amount of time; (b) for failing to object to the alleged Brady violations; (c) for failing to move to withdraw because of an alleged conflict of interest; (d) for failing to object to Detective Smith's hearsay testimony as to statements made by Detective Julio Ojeda; (e) for failing to object to the State's comments on future dangerousness; (f) for failing to preserve for appeal arguments regarding Dr. Lloyd Miller's rebuttal testimony; (g) for failing to object to the State's allegedly improper comments and questions; (h) for failing to effectively challenge the applicability of the aggravating factors and vagueness of the jury instructions; (i) for failing to effectively challenge the State's use of the Burke case; (j) for failing to present evidence that would have defeated the CCP aggravator and for failing to challenge the vagueness of the instruction; and (4) cumulative errors deprived Muhammad of a fundamentally unfair trial. We also reject as meritless Muhammad's contention that the circuit court applied an improper standard of review in summarily denying Muhammad's postconviction motion and his request that we "conduct an independent review of the materials submitted to this Court under seal that were held by the lower court to be either exempt from disclosure and/or not containing Brady evidence."
[10] Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar provides:

A lawyer shall not:
. . . .
(4) after dismissal of the jury in a case with which the lawyer is connected, initiate communication with or cause another to initiate communication with any juror regarding the trial except to determine whether the verdict may be subject to legal challenge; provided, a lawyer may not interview jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist; and provided further, before conducting any such interview the lawyer must file in the cause a notice of intention to interview setting forth the name of the juror or jurors to be interviewed. A copy of the notice must be delivered to the trial judge and opposing counsel a reasonable time before such interview. The provisions of this rule do not prohibit a lawyer from communicating with members of the venire or jurors in the course of official proceedings or as authorized by court rule or written order of the court.
[11] This Court, in rejecting Muhammad's argument on direct appeal from the resentencing proceeding that to execute him after he has already endured more than two decades on death row is unconstitutionally cruel and unusual punishment, explained: "As the State points out, no federal or state courts have accepted Knight's argument that a prolonged stay on death row constitutes cruel and unusual punishment, especially where both parties bear responsibility for the long delay." Knight, 746 So.2d at 437 (emphasis added).
[12] We also deny Muhammad's Supplemental Petition for Writ of Habeas Corpus. See Chandler v. Crosby, 916 So.2d 728 (Fla. 2005), holding that the decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), does not apply retroactively.